| | |
|---|---|
| Xavier Becerra<br>Attorney General of California<br>Michael Newman<br>Senior Assistant Attorney General<br>Sarah E. Belton<br>Supervising Deputy Attorney General<br>Rebekah A. Fretz<br>James F. Zahradka II<br>Garrett M. Lindsey (SBN 293456)<br>Deputy Attorneys General<br>  300 South Spring Street, Suite 1702<br>  Los Angeles, CA 90013<br>  Telephone: (213) 269-6402<br>  E-mail: Garrett.Lindsey@doj.ca.gov<br>*Attorneys for Plaintiff State of California* | Dana Nessel<br>Attorney General of Michigan<br>Fadwa A. Hammoud*<br>Solicitor General<br>Toni L. Harris*<br>Neil Giovanatti*<br>Assistant Attorneys General<br>  P.O. Box 30758<br>  Lansing, MI 48909<br>  Telephone: (517) 335-7603<br>  E-mail: GiovanattiN@michigan.gov<br>*Attorneys for Plaintiff State of Michigan*<br>*\*Appearing Pro Hac Vice* |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF MICHIGAN, STATE OF CALIFORNIA, et al.,<br><br>                              Plaintiffs,<br><br>   v.<br><br>**ELISABETH D. DEVOS, in her official capacity as the United States Secretary of Education, and UNITED STATES DEPARTMENT OF EDUCATION,**<br><br>                              Defendants. | Case No. 3:20-cv-04478-JD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:         August 18, 2020<br>Time:        11:30 AM<br>Judge:       Hon. James Donato<br>Trial Date: None set<br>Action Filed: July 7, 2020 |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 2

    I.    Plaintiffs Are Likely to Succeed on Their Claims that the Rule and the Guidance Are Unlawful and Unconstitutional .......................................................... 2

        A.    The Equitable Services Requirement in Section 18005 of the CARES Act Is Not Ambiguous ................................................................... 2

            1.    Section 18005 of the CARES Act Is Not Ambiguous .................... 2

            2.    The Rule Is Not Entitled to Deference. .......................................... 5

        B.    Defendants Fail to Offer Any Viable Argument Contesting Plaintiffs' Constitutional Claims ................................................................. 7

        C.    ED's Actions Are Arbitrary and Capricious in Violation of the APA ........ 7

        D.    ED Did Not Have Good Cause to Issue the Rule as an Interim Final Rule ............................................................................................................ 9

    II.    Plaintiffs Will Suffer Irreparable Harm ............................................................... 10

    III.    The Public Interest Weighs Heavily in Favor of Provisional Relief ..................... 12

CONCLUSION ............................................................................................................................... 13

i

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)

<sup>1</sup>

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Trucking Ass'ns v. City of Los Angeles*
559 F.3d 1046 (9th Cir. 2009) ............................................................................................. 12

*California v. Azar*
911 F.3d 558 (2018) ........................................................................................................... 10

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*
467 U.S. 837 (1984) ......................................................................................................... 5, 6

*Citizens to Preserve Overton Park, Inc. v. Volpe*
401 U.S. 402 (1971) ............................................................................................................. 8

*Confederated Tribes of the Chehalis Reservation v. Mnuchin*
No. 20-cv-01002, 2020 WL 1984297 (D.D.C. Apr. 27, 2020) ........................................... 10

*Dalton v. Specter*
511 U.S. 462 (1994) ............................................................................................................. 7

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*
140 S. Ct. 1891 (2020) ..................................................................................................... 8, 9

*FCC v. Fox Television Stations, Inc.*
556 U.S. 502 (2009) ............................................................................................................. 9

*Gonzales v. Oregon*
546 U.S. 243 (2006) ......................................................................................................... 5, 6

*Morales v. Trans World Airlines, Inc.*
504 U.S. 374 (1992) ........................................................................................................... 11

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*
463 U.S. 29 (1983) ............................................................................................................... 8

*Nat'l Fed'n of Indep. Bus. v. Sebelius*
567 U.S. 519 (2012) ......................................................................................................... 2, 3

*Sierra Club v. Trump*
929 F.3d 670 (9th Cir. 2019) ........................................................................................... 6, 13

*Sierra Club v. Trump*
963 F.3d 874 (9th Cir. 2020) ................................................................................................ 7

ii

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)

## **TABLE OF AUTHORITIES**
(continued)

**Page**

*Skidmore v. Swift & Co.*
  323 U.S. 134 (1944) ................................................................................................. 6, 7

*United States v. Timilty*
  148 F.3d 1 (1st Cir. 1998) .............................................................................................. 2

*United States v. Valverde*
  628 F.3d 1159 (9th Cir. 2010) ..................................................................................... 10

*Washington v. DeVos*
  No. 2:20-CV-0182-TOR, 2020 WL 3125916 (E.D. Wash. June 12, 2020) .................. 6

*Washington v. Trump*
  441 F. Supp. 3d 1101 (W.D. Wash. 2020) .................................................................. 10

*Whitman v. Am. Trucking Ass'ns*
  531 U.S. 457 (2001) ...................................................................................................... 6

*Wilder's S.S. Co. v. Low*
  112 F. 161 (9th Cir. 1901) ......................................................................................... 2, 3

**STATUTES**

5 United States Code
  § 706 ........................................................................................................................... 10

20 United States Code
  § 6320 ........................................................................................................................... 3

**OTHER AUTHORITIES**

34 C.F.R. § 76.665 (2020) ................................................................................................ 11

H.R. 748, 116th Cong.
  § 1102 ......................................................................................................................... 13
  § 18002 ..................................................................................................................... 2, 3
  § 18003 ............................................................................................................... 3, 4, 12
  § 18005 ................................................................................................................. passim

H.R. 6800, 116th Cong.
  title IV ........................................................................................................................ 11

Phyllis W. Jordan, *What Congressional Covid Funding Means for K-12 Schools*,
  Future Ed (July 29, 2020), https://www.future-ed.org/what-congressional-
  covid-funding-means-for-k-12-schools/ .................................................................... 11

iii

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)

## INTRODUCTION

Plaintiffs' motion for preliminary injunction and the 15 declarations from education agencies across the country demonstrate that injunctive relief from the U.S. Department of Education's (ED) unlawful rewrite of Section 18005 of the CARES Act is necessary to avoid diverting more than $150 million in CARES Act funds intended for public schools to private schools. ED fails to produce any evidence rebutting Plaintiffs' motion or the corresponding declarations. *See generally* Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Inj., ECF No. 68 (Opp.). Defendants also fail to address, let alone refute, many of the arguments asserted by Plaintiffs in support of their claims. Most pointedly, Defendants do not even reference their improper addition of a supplement-not-supplant restriction, despite the utter lack of evidence of congressional intent to impose such a restriction. Defendants also fail to refute the substance of Plaintiffs' constitutional claims; the lack of rulemaking authority in Sections 18002, 18003, and 18005 of the CARES Act; the lack of any implicit rulemaking authority; and ED's inexplicable change in policy from that announced in its initial Guidance to the new two-pronged approach published in the Rule, including the addition of two oppressive "poison pill" restrictions on LEAs' use of the funds if the LEAs choose to allocate the funds using the proportional-share calculation in Section 1117 of the ESEA.

Instead, ED erroneously claims that Section 18005 is ambiguous and therefore gives ED authority to interpret the statute through emergency rulemaking. As addressed in both Plaintiffs' principal brief and further below, ED's faulty interpretation of Section 18005 is contrary to the plain language of the CARES Act. ED's claim that the relevant statutory language is ambiguous is inconsistent with controlling Supreme Court and Ninth Circuit precedent. Further, Defendants' unsupported attempt to minimize the significant harms caused by ED's Rule to public education falls flat. Plaintiffs have demonstrated significant and irreparable harm due to the Rule.

In short, Defendants' arguments fail to rebut Plaintiffs' likelihood of success on their claims, the irreparable harm they face, and the balance of equities weighing heavily in favor of an injunction. This Court should grant Plaintiffs' motion and enjoin ED from imposing or enforcing its Guidance or Rule on Plaintiffs during the pendency of this action.

1

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)

# ARGUMENT

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CLAIMS THAT THE RULE AND THE GUIDANCE ARE UNLAWFUL AND UNCONSTITUTIONAL

### A. The Equitable Services Requirement in Section 18005 of the CARES Act Is Not Ambiguous

Defendants' principal argument is that Section 18005 is ambiguous, thereby requiring ED to exercise interpretative rulemaking authority to resolve the purported ambiguity. Opp. 5, 7-10. Section 18005 is unambiguous. ED's attempt to read ambiguity into the statute so that ED can pursue its policy objective of redirecting funds to support private schools neither validates its exercise of rulemaking authority nor entitles its interpretation to any degree of deference.

#### 1. Section 18005 of the CARES Act Is Not Ambiguous

The pertinent phrase in Section 18005—"in the same manner"—"has a settled and well-understood meaning in legislation." *Wilder's S.S. Co. v. Low*, 112 F. 161, 164 (9th Cir. 1901); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius* (*NFIB*), 567 U.S. 519, 545-46 (2012); *United States v. Timilty*, 148 F.3d 1, 3, 5 (1st Cir. 1998). Defendants offer nothing to counter this long-established precedent, under which "in the same manner" means "to use the same methodology and procedures." *NFIB*, 567 U.S. at 545; *Wilder's S.S. Co.*, 112 F. at 164 ("[i]t means by similar proceedings").[1] Employing this well-understood construction of Section 18005, LEAs are required to adopt the procedures and methodologies of Section 1117, including the proportional-share calculation and eligibility requirements. This plain reading directly cuts against ED's flawed interpretation and is alone sufficient for the Court to deem the phrase unambiguous.

Disregarding this binding legal precedent, Defendants argue that Section 18005 is ambiguous for two reasons. First, Defendants claim the permitted uses for GEER and ESSER funds in Sections 18002(c) and 18003(d) allow "for a broad range of services that benefit *all* students" and are purportedly in "tension" with the eligibility requirements in Section 1117, which, by their nature, limit the private-school students who receive equitable services. Opp. 7-8

---

[1] Defendants apparently attempt to avoid this binding precedent by picking one word in the phrase ("manner"), pointing to a dictionary definition of that term, and ignoring the other words in the phrase. Opp. 9. But the *phrase* is well-understood, as confirmed in *NFIB* and the other cases cites above, rendering Defendants' efforts to chop the phrase apart meritless.

2

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)

(emphasis in original). Second, Defendants assert that, if Section 18005 fully incorporates Section 1117, two provisions in Section 18005 are purportedly rendered superfluous because they are similar to provisions in Section 1117. Opp. 8. Neither of these arguments has merit.

For their first argument, Defendants incorrectly conflate the permitted uses of CARES Act funds set forth in Sections 18002(c) and 18003(d) with the eligibility requirements for equitable services under Section 1117. Section 1117's eligibility requirements and proportional-share calculation are unrelated to the use of the funds under both the CARES Act and Title I-A. These requirements from Section 1117 are incorporated into Section 18005 as they are the procedures for determining the amount of funding for equitable services and who is eligible. *See NFIB*, 567 U.S. at 545; *Wilder's S.S. Co.*, 112 F. at 164. Only after the funds are allocated between public schools and equitable services for private schools, and eligibility for services is determined, do the permitted uses described in Sections 18002(c) and 18003(d) come into play.

While some of the permitted uses described in Sections 18002(c) and 18003(d) are only available to LEAs by their nature, *see, e.g.*, H.R. 748, 116th Cong. (CARES Act) § 18002(c) ("support the ability of such [LEAs] to continue to provide educational services to their students and to support the on-going functionality of the [LEA]"); § 18003(d)(5) ("[d]eveloping and implementing procedures and systems to improve the preparedness and response efforts of [LEAs]"), (d)(12) ("[o]ther activities that are necessary to maintain the operation of and continuity of services in [LEAs] and continuing to employ existing staff of the [LEA]"), other permitted uses mirror the available services described in Section 1117. *Compare* 20 U.S.C. § 6320(a)(1)(A) *with* CARES Act § 18003(d)(1), (4), (10), (11). As the eligibility requirements incorporated into Section 18005 are unrelated to the permitted uses described in Sections 18002(c) and 18003(d), the latter create no ambiguity in Section 18005.

Second, the inclusion of a consultation provision and public-maintenance provision in Section 18005 does not render the comparable provisions in Section 1117 superfluous. As explained in Plaintiffs' principal brief, the consultation provision is not the same in the two statutes, as Section 18005 limits the parties involved in consultation. Pls.' Mot. for Prelim. Inj., ECF No. 35 (Mot.) 14. The public-maintenance provision is not necessarily a procedure or

methodology that would be incorporated into Section 18005 under a plain reading of the statute consistent with the Supreme Court and Ninth Circuit's understanding of "in the same manner." *Id.* at 15. Thus, these provisions do not create ambiguity.

In addition, Defendants' contention that the term "equitable" in and of itself means all students should have access to services using the CARES Act funds mischaracterizes the broader context of the statute and ignores that "equitable services" is a well-understood term of art. *See* Opp. 10; *see also* Amici Private School Associations' and Advocacy Groups' Amicus Br. in Supp. of Defs. and in Opp. to Prelim. Inj., ECF No. 60-1 at 8-9. The ESSER funds are provided to the states, then the LEAs, through well-established Title I formulas that are based on the number of low-income students in the states and LEAs. *See* CARES Act § 18003(c). If an LEA did not receive Title I-A funds in the previous fiscal year, it will not necessarily receive ESSER funds. Thus, Defendants' argument that Congress's use of the term "equitable" means that *all* students should benefit from CARES Act funds does not comport with Congress' choice to direct funds to low-income students or the fact that not all LEAs will receive CARES Act funds for public- or private-school students. Congress's vision of what an "equitable" funding allocation consists of—not ED's vision—controls.

Defendants further fail to explain why ED incorporates the proportional-share calculation described in Section 8501 of the ESEA (based on total enrollment of students), and not Section 1117 (based on enrollment of low-income students). Instead, Defendants deflect, arguing that if Congress had referenced Section 8501, rather than Section 1117, the same allegedly superfluous provisions described above would still render Section 18005 ambiguous. But Defendants miss the point: the Guidance and Rule incorporate the proportional-share calculation from Section 8501, despite the CARES Act specifically referencing Section 1117. No rationale supports this interpretation and, again, Congress's policy choice governs here.[2]

Moreover, Defendants' argument that Section 18005 is ambiguous and that all students should receive services using CARES Act funds does not square with ED's Rule. For example,

---

[2] Further evidencing that ED's Rule departs from congressional intent, at least 100 members of Congress submitted comments to the Rule expressing their disagreement with ED's interpretation of Section 18005. *See* Suppl. Req. for Judicial Notice Exs. 1-21.

4

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)

1  ED's theory that Section 18005 requires all private-school students be counted for purposes of
2  allocating funds is negated by Option #1 of the Rule, which permits LEAs to calculate the
3  proportional share based on the number of low-income students only. ED provides no explanation
4  for this discrepancy. Likewise, in the phrase ED seeks to interpret, "manner" is singular, so no
5  support exists for the Rule's two options ("manners") for proportioning the funds. Further, the
6  supplement-not-supplant restriction that ED includes with Option #1 under the Rule is not
7  referenced or included in any relevant section of the CARES Act, while Congress expressly
8  incorporated supplement-not-supplant requirements for uses of other CARES Act funding outside
9  K-12 education. ED invented this restriction, which has no basis in the statute, and seems
10 designed to push LEAs to proportion funds under Option #2, the only option ED offered in its
11 Guidance.

12       Section 18005 is clear: LEAs should follow the procedures and methodologies set forth in
13 Section 1117 for providing equitable services to private-school students. ED's attempt to sow
14 discord and confusion about Section 18005 is unsupported, and its Guidance and Rule make no
15 sense under its own interpretation of Section 18005.

16         **2.   The Rule is Not Entitled to Deference.**

17       Assuming *arguendo* that Section 18005 is ambiguous (it is not), ED's interpretation is not
18 entitled to deference. *Chevron* deference "is warranted *only* 'when it appears that Congress
19 delegated authority to the agency generally to make rules carrying the force of law, *and* that the
20 agency interpretation claiming deference was promulgated in the exercise of that authority.'"
21 *Gonzales v. Oregon*, 546 U.S. 243, 255-56 (2006) (quoting *United States v. Mead Corp.*, 533
22 U.S. 218, 226-27 (2001)) (emphasis added). Defendants cannot meet either requirement here.

23       To support its claim that Congress has delegated its authority here, ED points to two
24 provisions in its organic act, 20 U.S.C. Ch. 31, to justify its rulemaking. First, ED cites provisions
25 allowing the Secretary to "make, promulgate, [and] issue . . . rules and regulations governing the
26 manner of operation of, and governing the applicable programs administered by, the
27 Department." Opp. 9 (quoting 20 U.S.C. § 1221e-3). However, a court in this Circuit has
28 expressly rejected ED's efforts to apply this provision in the context of the CARES Act. *See*

5

*Washington v. DeVos*, No. 2:20-CV-0182-TOR, 2020 WL 3125916, at *9 (E.D. Wash. June 12, 2020). That decision correctly noted that "courts have expressed skepticism where an agency attempts to impose special conditions on grants absent express authority to do so, as such a broad interpretation would be antithetical to the concept of a formula grant." *Id.* (quoting *City of Los Angeles v. Barr*, 941 F.3d 931, 942 (9th Cir. 2019) (punctuation omitted).

Second, ED cites its general administrative delegation to promulgate rules "necessary or appropriate to manage the functions of the Secretary or the Department." Opp. 9 (quoting 20 U.S.C. § 3474). This delegation is limited, restricted to the functions of the Secretary or ED. *See Gonzales*, 546 U.S. at 264-65 ("When Congress chooses to delegate a power [to interpret a statute], it does so not by referring back to the administrator's functions, but by giving authority over the provisions of the statute [the administrator] is to interpret"). The activities of LEAs are not "the functions of the Secretary or the Department." Lacking congressional authority to interpret Section 18005, *Chevron* deference is not warranted.

Even if Congress had provided authority to ED to interpret the CARES Act, courts must still use the "traditional tools of statutory construction" to determine whether "the intent of Congress is clear" and "give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 & n.9 (1984). When a statute is ambiguous to some extent and the agency has authority to interpret the statute, an agency cannot offer an interpretation that contradicts the portion of the statute that is unambiguous. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 481 (2001). As discussed above and in Plaintiffs' motion, *see* Mot. 12-15, even if some aspects of Section 18005 are ambiguous (they are not), in directing LEAs to provide equitable services "in the same manner as" provided under Section 1117, when it could have instead referenced Section 8501, Congress unambiguously demonstrated its intent that equitable services be provided using the proportions provided by Section 1117 of the ESEA.

Finally, although not argued by Defendants, their interpretation could theoretically be entitled to more limited *Skidmore* deference, which courts may grant to agency interpretations to the extent that their reasoning is persuasive. *See Sierra Club v. Trump*, 929 F.3d 670, 692 (9th Cir. 2019) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). Under *Skidmore*, courts afford

6

deference "depend[ing] upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." 323 U.S. at 140. As discussed throughout Plaintiffs' principal brief and herein, ED's interpretation and Rule lack any indicia of thoroughness or valid reasoning, and are inconsistent not only with Section 18005 itself, but with ED's own prior interpretations. The Rule is thus not entitled to *Skidmore* deference.

### B.  Defendants Fail to Offer Any Viable Argument Contesting Plaintiffs' Constitutional Claims

Defendants fail to provide any substantive response to Plaintiffs' multiple constitutional claims. Rather, Defendants cite *Dalton v. Specter*, 511 U.S. 462 (1994), for the sweeping proposition that if a plaintiff makes a constitutional challenge to an action by the federal government which also implicates a lack of statutory authority, the constitutional challenge is barred. *See* Opp. 12. The Ninth Circuit recently rejected this exact argument. *See Sierra Club v. Trump*, 963 F.3d 874, 889-90 (9th Cir. 2020).

As the Ninth Circuit explained, *Dalton* is limited to instances in which plaintiffs' claim is one "simply alleging that the [executive branch] has exceeded [its] statutory authority." *Id.* at 890 (quoting *Dalton*, 511 U.S. at 473) (quotation marks omitted). But Plaintiffs' constitutional challenge here is "address[ing a] situation[] in which the [executive branch] exceeds [its] statutory authority, and in doing so, also violates a specific constitutional prohibition," *id.*; namely, the Spending Clause and separation of powers. *See* Mot. 10, 16-20. *Dalton* is accordingly inapplicable.

### C.  ED's Actions Are Arbitrary and Capricious in Violation of the APA

Defendants barely address Plaintiffs' arguments that their actions are arbitrary and capricious for numerous reasons in addition to their inconsistency with the CARES Act. *Compare* Opp. 11-12 *with* Mot. 21-23. To the extent they even discuss those issues, Defendants' skeletal arguments fail.

First, Defendants repeatedly urge this Court not to "second guess" ED's "policy judgment" under the APA's arbitrary and capricious standard. Opp. 11 (citing *FCC v. Fox Television*

7

*Stations, Inc.*, 556 U.S. 502, 530 (2009)). To be sure, under that standard "a court is not to substitute its judgment for that of the agency." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.* (*Regents*), 140 S. Ct. 1891, 1905 (2020) (quoting *Fox Television Stations*, 556 U.S. at 513) (internal quotation marks omitted). However, courts are obligated to make a "searching and careful" inquiry, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), into "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," *Regents*, 140 S. Ct. at 1905 (quoting *Citizens to Preserve Overton Park*, 401 U.S. at 416) (internal quotation marks omitted). That review includes whether the agency "failed to consider important aspects of the problem," *Regents*, 140 S. Ct. at 1910 (internal punctuation omitted), and "whether there was legitimate reliance" on ED's prior policies; on the latter point, if those policies "have engendered serious reliance interests," they "must be taken into account." *Id.* at 1913 (citing, inter alia, *Fox Television Stations*, 556 U.S. at 515) (internal quotation marks omitted).

Defendants refute none of these legal principles, nor dispute that they failed to consider the myriad issues that Plaintiffs set forth in their motion, supported by declarations from multiple LEAs and SEAs. *See* Mot. 9, 17-19, 21-23, 27-29. Instead, Defendants argue only that Plaintiffs' assessment of harms is "one-sided," in that it "ignores [harms] suffered by private school students and teachers during the pandemic." Opp. 11. In stark contrast to Plaintiffs' robust evidentiary presentation, Defendants provide not a shred of evidence of these ostensible harms, nor cite to any evidence that such harms drove Congress's passage of the CARES Act. Even leaving this failure aside, the fact that private school students and teachers' interests may *also* be a relevant factor for ED to take into account when it promulgated the Guidance and Rule does not excuse ED's failure to take into account the serious and uncontested harms that its actions cause to public school students, teachers, and schools.[3] *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*

---

[3] Nor does Defendants' sweeping statement that "Congress directed that use of CARES Act funds be equitable," Opp. 11, undermine Plaintiffs' arguments on this score. As discussed above, Defendants point to nothing in the CARES Act's text or legislative history to support their interpretation. *Supra* at 4. Further, the equitable services provisions themselves manifest Congress's intent that federal education funds are equitably distributed for services to appropriate
(continued…)

8

*Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (if an agency fails to consider "an important aspect of the problem" in issuing a rule, that rule is arbitrary and capricious).

Defendants' claim that they have not changed their prior policies, Opp. 11-12, also falls flat. Most critically, Defendants completely ignore and have no response to the fact that they are reversing course on their earlier explicit statement that supplement-not-supplant restrictions would not apply to CARES Act funds, *see* Mot. 22 (citing Req. for Judicial Notice, ECF No. 35-3 (RJN) Ex. A at 5), apparently conceding this point. This alone renders their actions arbitrary and capricious.

Further, Defendants' argument that they neither formally altered their general interpretation of Section 1117's equitable services provisions nor their interpretation of the use of Title I funds for those services, Opp. 11, is a non sequitur, as Plaintiffs are not contending that they did so. Rather, as Plaintiffs demonstrated in their motion and discuss further herein, *supra* at 2-5, via the Guidance and Rule Defendants seek to enact a *sub silentio* change to those interpretations (i.e., that LEAs are only required to provide equitable services to private school students who are (1) at risk, and (2) reside in Title I public school attendance areas) based on a mistaken view that, in the CARES Act, Congress created a massive exception to the general statutory requirements. Indeed, Defendants' arguments only reinforce that ED has failed to "display awareness that it is changing position," *Fox Television Stations*, 556 U.S. at 515, a hallmark of arbitrary and capricious action.

Tellingly, Defendants do not even contest Plaintiffs' evidence—supported by multiple declarations—that LEAs and SEAs justifiably took budgetary actions in reliance on ED's extant policies. *See* Mot. 22. Defendants failed to take this reliance into account when they took their actions, and it was "arbitrary and capricious to ignore such matters." *Regents*, 140 S. Ct. at 1913 (quoting *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016)).

### D. ED Did Not Have Good Cause to Issue the Rule as an Interim Final Rule

Defendants claim the same emergency requiring the issuance of an injunction here was the basis for issuing the Rule as an interim final rule. Opp. 12. However, the COVID pandemic and

---

private-school students. Defendants make no showing that Congress empowered them to adopt additional measures that in Defendants' view somehow enhance "equity."

9

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)

its unprecedented economic effects on public education did not necessitate the Rule, unlike the need for an injunction. ED's creation of uncertainty regarding the allocation of ESSER and GEER funds through the issuance of the Guidance and the Rule does not support the issuance of the Rule absent notice-and-comment procedures. Uncertainty is not sufficient good cause normally, let alone when the uncertainty is solely created by ED, as it is here. *United States v. Valverde*, 628 F.3d 1159, 1166 (9th Cir. 2010) (uncertainty "is not a reasonable justification for bypassing notice and comment"). Having no good cause to issue the Rule without notice-and-comment, the Rule is unlawful. 5 U.S.C. § 706(2)(D).

## II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM

Defendants do not contest that Plaintiffs are subject to significant harm as a result of the Rule. Rather, Defendants argue that these harms—caused by significant diversions of funding away from the public schools—are not irreparable. Opp. 13-14. Defendants' argument is unsupported by any evidence and conflicts with legal precedent.

The loss of more than $150 million in emergency funding is irreparable harm as Plaintiffs will not be able to recover damages from ED or funds improperly diverted to private schools. *California v. Azar*, 911 F.3d 558, 581 (2018) ("harm is irreparable here because the states will not be able to recover monetary damages connected to the IFRs")[4]; *see also, e.g.*, *Washington v. Trump*, 441 F. Supp. 3d 1101, 1126 (W.D. Wash. 2020) (loss of tax revenue and federal government funding of a local project constituted irreparable harm). Defendants' characterization of this diversion of these funds as merely an "economic injury," Opp. 13, is "terribly misguided" as these "are not funds appropriated to carry out secondary or residual government functions" but "are monies that Congress appropriated on an emergency basis to assist [] governments in providing core public services" in response to the pandemic. *Confederated Tribes of the Chehalis Reservation v. Mnuchin*, No. 20-cv-01002, 2020 WL 1984297, at *8 (D.D.C. Apr. 27, 2020) (holding tribes suffered irreparable harm due to an agency's action reducing their share of

---

[4] Defendants' attempt to distinguish *Azar* lacks merit. Opp. 14 n.4. Just like the plaintiffs in *Azar*, Plaintiffs here are unable to recover economic damages and will be required to expend their own resources to compensate for the loss of funds driven by the Guidance and Rule. *See* Guerrant Decl. ¶ 26; Jackson Decl. ¶ 26; Jones Decl. ¶ 29; Kaneshiro-Erdmann Decl. ¶ 25; Makin Decl. ¶ 27; Oates Decl. ¶ 22; Stem Decl. ¶ 27; Stewart Decl. ¶¶ 25-26.

10

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)

CARES Act funding). This loss of funding is immediate: Plaintiffs and their public schools must make *immediate* decisions to address the pandemic's effects on education, particularly with the imminent start of the school year. With the steep drop in funding available for public education available at the state and local level, *see* Guerrant Decl. ¶¶ 12, 15, 26; Constancio Decl. ¶ 16; Goldson Decl. ¶¶ 10, 13; Gordon Decl. ¶ 12; Hoffmann Decl. ¶ 13; Jackson Decl. ¶ 26; Jones Decl. ¶ 14; Kaneshiro-Erdmann Decl. ¶¶ 15, 25; Oates Decl. ¶ 10; Salmon Decl. ¶ 11; Stem Decl. ¶ 27; Wallace Decl. ¶ 12, LEAs must use all available resources including ESSER and GEER funds to meet the current and unprecedented demands, *see* Guerrant Decl. ¶ 28; Gordon Decl. ¶ 24; Jackson Decl. ¶ 15; Jones Decl. ¶¶ 14, 29; Kaneshiro-Erdmann Decl. ¶ 25; Makin Decl. ¶¶ 16-17, 29; Oates Decl. ¶ 24; Salmon Decl. ¶ 22; Stem Decl. ¶ 14; Stewart Decl. ¶ 26. While Defendants suggest that the LEAs could "reapportion unobligated GEER and ESSER funds" at the conclusion of the litigation, LEAs do not have the luxury of waiting or "unobligat[ing]" funds. Opp. 13. The need for funds is desperate and immediate.[5] Guerrant Decl. ¶ 26; Jackson Decl. ¶ 26; Jones Decl. ¶ 29; Kaneshiro-Erdmann Decl. ¶ 25; Makin Decl. ¶ 27; Oates Decl. ¶ 22; Stem Decl. ¶ 27; Stewart Decl. ¶¶ 25-26.

Separate from the irreparable economic harm the Rule will cause, Defendants fail to address the irreparable harm caused by the imposition of the supplement-not-supplant restriction on LEAs who choose Option #1 for appropriating the CARES Act funds. *See* 34 C.F.R. § 76.665(c)(3). This restriction threatens the loss of future Title I funding if the LEAs use the CARES Act funds for non-Title I schools, including for district-wide expenditures like purchases of remote learning equipment, transportation, and facility sanitation. *See, e.g.*, Oates Decl. ¶ 17; Hoffmann Decl. ¶¶ 41-42; Jones Decl. ¶ 38; Jackson Decl. ¶ 35; Constancio Decl. ¶ 34. Such a Hobson's choice constitutes irreparable harm where the threat of civil enforcement and loss of future funding looms large. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992);

---

[5] Congress continues to recognize the immediate need for additional funding for public education, as shown by the stimulus package proposals currently under consideration; both versions proposed by the parties include tens of billions of dollars for education. *See* HEROES Act, H.R. 6800, 116th Cong., title IV (2020); *see also* Phyllis W. Jordan, *What Congressional Covid Funding Means for K-12 Schools*, Future Ed (July 29, 2020), https://www.future-ed.org/what-congressional-covid-funding-means-for-k-12-schools/.

11

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)

*Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009).

Finally, as discussed in Plaintiffs' principal brief, the Rule places Plaintiffs in legal jeopardy because they cannot comply with both the Rule and Section 18005. Defendants assert that Plaintiffs cannot demonstrate ED would "mount a legal challenge" if a plaintiff did not comply with the Rule. Opp. 14. But Defendants do not categorically renounce ED's ability to enforce the Rule against Plaintiffs during the pendency of this litigation, and the certifications that Plaintiffs executed remain legally binding on Plaintiffs. Guerrant Decl. Ex. A; Constancio Decl. Ex. A; Stewart Decl. Ex. A; Kaneshiro-Erdmann Decl. Ex. A; Makin Decl. Ex. A; Salmon Decl. Ex. A; Goldson Decl. Ex. A; Baca Decl. Ex. A; Stem Decl. Ex. A; Jones Decl. Ex. A; Jackson Decl. Ex. A; Gordon Decl. Ex. A. In fact, ED asks the Court to deny granting the preliminary injunction *so that* Defendants may "continue implementing" the CARES Act in order to "ensure[] that *all* students benefit from the CARES Act funds."[6] Opp. 15. Thus, Plaintiffs remain stuck, unable to comply with the Rule and Section 18005 while the threat of ED's potential enforcement remains looming.

Plaintiffs' 15 declarations make clear that the Rule has caused and continues to cause irreparable harm. Defendants submit no evidence to counter these declarations and fail to show how the significant loss of funds for Plaintiffs' public-school students does not amount to irreparable harm.

### III. THE PUBLIC INTEREST WEIGHS HEAVILY IN FAVOR OF PROVISIONAL RELIEF

For the equity elements, Defendants' arguments rely heavily on their contention that private schools, like public schools, are also adversely impacted by the COVID-19 pandemic. *See* Opp. 14-15. Plaintiffs do not contest that private schools are likely impacted by the pandemic—however, the low-income students targeted to receive Title I and CARES Act funds have faced significantly greater health and economic impacts from the virus than many private school students. *See* RJN Exs. G, J; Jones Decl. ¶ 12. Defendants disregard that Congress provided

---

[6] As discussed above, Defendants' implementation of the CARES Act does not ensure that "all" students benefit from the CARES Act funds at issue. Because only LEAs that received Title I-A funding in the previous school year were allocated ESSER funds, *see* CARES Act § 18003(c), students who reside in an LEA that did not receive Title I-A funds (whether they attend public or private schools) will not necessarily receive a benefit under the Rule.

12

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)

private schools with access to other emergency funds in the CARES Act, which are not available to public schools. Specifically, Congress authorized the Paycheck Protection Program (PPP), which numerous private schools are eligible for and have taken advantage of. CARES Act § 1102; *see also* The Council of The Great City Schools Amicus Curiae Br. in Supp. of Pls.' Mot. for Prelim. Inj., ECF No. 47-1 at 9-10 & Ex. B; Hoffmann Decl. ¶¶ 47-48. PPP is not available to public schools. Since private schools have access to PPP funding that public schools do not, it is not equitable for private schools to receive ESSER and GEER funds on an equal basis as public schools.

Finally, the public interest is served by having Congress's intended appropriations implemented and not thwarted by ED's efforts to meet its own policy goals. *Cf. Sierra Club*, 929 F.3d at 707 ("The public interest in ensuring protection of this separation of powers is foundational and requires little elaboration."). The equitable factors weigh heavily in favor of Plaintiffs.

## CONCLUSION

For the foregoing reasons, and those addressed in Plaintiffs' principal brief, Plaintiffs request this Court grant their motion.

13

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)

| | |
|---|---|
| Dated: August 5, 2020 | Respectfully Submitted, |
| | DANA NESSEL |
| | Attorney General of Michigan |
| | FADWA A. HAMMOUD* |
| | Solicitor General |
| | |
| | */s/ Neil Giovanatti* |
| | |
| | NEIL GIOVANATTI* |
| | TONI L. HARRIS* |
| | Assistant Attorneys General |
| | *Attorneys for Plaintiff State of Michigan* |
| | *\*Appearing Pro Hac Vice* |
| | |
| | XAVIER BECERRA |
| | Attorney General of California |
| | MICHAEL L. NEWMAN |
| | Senior Assistant Attorney General |
| | SARAH E. BELTON |
| | Supervising Deputy Attorney General |
| | REBEKAH A. FRETZ |
| | GARRETT M. LINDSEY |
| | JAMES F. ZAHRADKA II |
| | Deputy Attorneys General |
| | *Attorneys for Plaintiff State of California* |

14

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)

| | | |
|---|---|---|
| 1 | KARL A. RACINE<br>*Attorney General of District of Columbia*<br>KATHLEEN KONOPKA<br>Deputy Attorney General, Public Advocacy Division<br>*Attorneys for Plaintiff District of Columbia*<br>*Appearing pro hac vice (application forthcoming)* | JAMES E. JOHNSON<br>*Corporation Counsel of the City of New York*<br>ERIC PROSHANSKY<br>HOPE LU<br>GAIL RUBIN<br>Assistant Corporation Counsel<br>*Attorneys for Plaintiff the Board of Education of the City School District of the City of New York*<br>*Appearing pro hac vice (application forthcoming)* |

KARL A. RACINE
*Attorney General of District of Columbia*
KATHLEEN KONOPKA
Deputy Attorney General, Public Advocacy Division
*Attorneys for Plaintiff District of Columbia*
*Appearing pro hac vice (application forthcoming)*

CLARE E. CONNORS
*Attorney General of Hawaii*
HOLLY T. SHIKADA
KEVIN M. RICHARDSON*
Deputy Attorneys General
*Attorneys for Plaintiff State of Hawaii*
*\*Appearing pro hac vice*

AARON M. FREY
*Attorney General of Maine*
SARAH A. FORSTER*
Assistant Attorney General
*Attorneys for Plaintiff State of Maine*
*\*Appearing pro hac vice*

BRIAN E. FROSH
*Attorney General of Maryland*
STEVEN M. SULLIVAN*
Solicitor General
*Attorneys for Plaintiff State of Maryland*
*\*Appearing pro hac vice*

HECTOR BALDERAS
*New Mexico Attorney General*
P. CHOLLA KHOURY
LISA GIANDOMENICO*
Assistant Attorneys General
*Attorneys for Plaintiff State of New Mexico*
*\*Appearing pro hac vice*

JOSH SHAPIRO
*Attorney General of Pennsylvania*
MICHAEL J. FISCHER
Chief Deputy Attorney General
*Attorneys for Plaintiff Commonwealth of Pennsylvania*
*Appearing pro hac vice (application forthcoming)*

JOSHUA L. KAUL
*Attorney General of Wisconsin*
HANNAH S. JURSS*
Assistant Attorney General
*Attorneys for Plaintiff State of Wisconsin*
*\*Appearing pro hac vice*

JAMES E. JOHNSON
*Corporation Counsel of the City of New York*
ERIC PROSHANSKY
HOPE LU
GAIL RUBIN
Assistant Corporation Counsel
*Attorneys for Plaintiff the Board of Education of the City School District of the City of New York*
*Appearing pro hac vice (application forthcoming)*

BOARD OF EDUCATION, CITY OF CHICAGO
DEPARTMENT OF LAW
JOSEPH MORIARTY
General Counsel
J. ERNEST MINCY*
Deputy General Counsel for Litigation
*Attorneys for Plaintiff Chicago Board of Education*
*\*Appearing pro hac vice*

SAN FRANCISCO UNIFIED SCHOOL DISTRICT
DANIELLE HOUCK
General Counsel
SUSANNE NAOMI STARECKI KIM
Sr. Deputy General Counsel
Legal Department
*Attorneys for Plaintiff San Francisco Unified School District*

SQUIRE PATTON BOGGS (US) LLP
GABRIEL COLWELL (CABN 216783)*
COLIN R. JENNINGS (OHBN 0068704)*
W. MICHAEL HANNA (OHBN 0020149)*
EMILY R. SPIVACK (OHBN 0090777)*
KEVIN J. BURTZLAFF (OHBN 0039648)*
Cleveland Municipal School District Board of Education
*Attorneys for Plaintiff Cleveland Municipal School District*
*\*Appearing pro hac vic*

15

Pls.' Reply ISO Mot. for Prelim. Inj. (3:20-cv-04478-JD)